**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BANK OF NEW YORK AS** | : | |
| **TRUSTEE FOR** | | |
| **CERTIFICATEHOLDERS** | : | **CIVIL ACTION NO. 3:13-0690** |
| **CWABS, INC. ASSET-BACKED** | | |
| **CERTIFICATES, SERIES 2006-24,** | : | **(JUDGE MANNION)** |
| **Plaintiff** | : | |
| **v.** | : | |
| **AMY J. BATES f/k/a** | : | |
| **AMY J. JONES and** | | |
| **RICHARD BATES,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Pending before the court are the cross-motions for partial summary judgment of defendants and plaintiff, (Doc. 38, Doc. 41). Based upon the court's review of the motions and related materials, the plaintiff's motion for partial summary judgment will be **GRANTED** with respect to Counts I and II of the amended complaint, (Doc. 11); the defendants' motion will be **DENIED** with respect to Count II and will be **GRANTED** with respect to Count III.

**I.     Procedural Background**

Plaintiff, Bank of New York as Trustee for the Certificateholders CWABS, Inc. Asset-Backed Certificates, Series 2006-24 (the "plaintiff"), initiated this action by filing a complaint on March 14, 2013, against defendants Amy J. Bates, formerly known as Amy J. Jones, ("Mrs. Bates"),

and Richard Bates ("Mr. Bates"), residents of 1712 Forest Acres Drive, Clarks Summit, PA. (Doc. 1). Defendants filed a motion to dismiss the complaint and plaintiff then filed an amended complaint on April 29, 2013.[1] (Doc. 11). In its amended complaint, the plaintiff asserts three counts: Count I - Default/Breach of Contract against defendant Mrs. Bates; Count II - Reformation by Mutual Mistake against both defendants; and Count III - Reformation by Unilateral Mistake against both defendants.[2] With respect to the breach of contract claim, damages in the amount of $164,004.78 are requested, based upon Mrs. Bates' alleged failure to make required monthly payments due on the Franklin Note, as well as related interest, costs and expenses. As to the reformation claims, plaintiff is seeking reformation of the Franklin Mortgage since it erroneously referenced the legal description of a vacant property owned by Mr. Bates and Mrs. Bates instead of their adjacent residential property upon which their house is situated. Mr. Bates and Mrs. Bates are the owners of the vacant property which is currently encumbered by the Franklin Mortgage. Plaintiff seeks to reform the Franklin Mortgage, based on mistake, to encumber the residential property instead of the vacant

---

[1]The complete factual background of this case as alleged in plaintiff's amended complaint was previously stated by the court in its March 28, 2014 Memorandum denying defendants' motion to dismiss. (Doc. 26).

[2]As stated by the court in its March 28, 2014 Memorandum, the plaintiff has not brought a claim against Mr. Bates related to the Franklin Note since he is not a party to the Note. Rather, the plaintiff's claim against Mr. Bates is for reformation of the Franklin Mortgage to which Mr. Bates is a party.

property.

On May 14, 2013, defendants filed a motion to dismiss the amended complaint. (Doc. 14). On March 28, 2014, the court issued a memorandum and order, denying defendants' motion to dismiss plaintiff's claims. (Doc. 26 & 27).

After the close of discovery, defendants filed a motion for partial summary judgment with respect to the second and third counts of plaintiff's amended complaint on May 19, 2014. (Doc. 38). Also, on May 19, 2014, plaintiff filed a motion for partial summary judgment regarding its breach of contract claim against defendant Mrs. Bates (Count I) and its claim for reformation by mutual mistake against Mrs. Bates and Mr. Bates (Count II). Both motions have been briefed and statements of material facts have been filed along with exhibits in support thereof. (Docs. 39, 44, 47, 48, 49, and Docs. 42, 43, 45, and 46). Thus, the cross-motions for partial summary judgment are ripe for disposition.

## II.   Material Facts[3]

Based on the statement of material facts and exhibits, the court finds the following material facts. The defendant Amy J. Bates, formerly known as

---

[3]Unless otherwise noted, the facts are taken from the parties' statements of material facts, responses thereto, and the exhibits submitted. (Docs. 39, 42, 44, 45 and 48). Most facts are not disputed by the parties. Disputed facts are noted.

Amy J. Jones, is the owner of a parcel of real property located at 1712 Forest Acres Drive, Clarks Summit, PA, ("Residential Property"). Specifically, in 1989, defendant Amy J. Bates and her former husband, Donald W. Jones, began living in a house on a parcel of property that was owned by her parents in Clarks Summit, Pennsylvania, with a street address of 1712 Forest Acres Avenue, i.e., the Residential Property. On April 5, 1995, Amy J. Bates and Jones purchased the Residential Property from Bates' parents for $1.00. In March 2000, Amy J. Bates and Jones decided to divorce. As part of the divorce, Jones granted all of his interest in the Residential Property to Amy J. Bates on March 24, 2000. In November of 2000, Amy J. Bates married defendant Richard Bates, however, she did not grant Richard any interest in the Residential Property. As such, Amy J. Bates is the sole owner of the Residential Property at all relevant times in this case.

Also, on March 24, 2000, Mrs. Bates received a loan for $105,000 from Saxon Mortgage, Ltd., secured by a mortgage on the Residential Property.

On March 19, 2003, Mrs. Bates acquired a 1.91 acre parcel of vacant property adjacent to the Residential Property from her mother for $1.00 ("Vacant Property"). Mrs. Bates later granted an equal interest in the Vacant Property to Mr. Bates. At no time did Mrs. Bates grant any interest in the Residential Property to Mr. Bates. The Vacant Property and the Residential Property have distinct legal descriptions, but the same mailing address. No house has ever been built on the Vacant Property.

After a fire in 2005, the house on the Residential Property was destroyed and Mrs. Bates used fire insurance proceeds to rebuilt it and it has been the defendants' primary residence since then.

In October 2006, Mrs. Bates, on her own, applied for a loan from Franklin First Financial, Ltd., ("Franklin"), which was to be used to pay off the amount owed under the Saxon Loan as well as to finish work on her home situated on the Residential Property. The loan was to be secured against Mrs. Bates' sole interest in the Residential Property.

Specifically, on October 19, 2006, Mrs. Bates, in her own name and without the participation of Mr. Bates, submitted a 30-year Residential Loan Application to Franklin through which she sought a loan in the amount of $164,500 to refinance the Residential Property, i.e., her primary residence, located at 1712 Forest Acres Drive, Clarks Summit, PA. (Doc. 42-6). The loan application, in which Mrs. Bates signed every page, indicated that:

a.  Property located at 1712 Forest Acres Drive, Clarks Summit, PA, would be used to secure the loan;

b.  The property located at 1712 Forest Acres Drive, Clarks Summit, PA, which would be used to secure the loan was her "primary residence" and was a single family residence;

c.  The property located at 1712 Forest Acres Drive, Clarks Summit, PA, had a value of $235,000.

Although Mr. Bates did not sign the Franklin loan application because

he was not an owner of the intended collateral, he knew that Mrs. Bates intended to use the loan, in part, to pay off the Saxon Loan as well as credit card bills and to finish the construction on the house and, that Mrs. Bates was to secure the loan against the Residential Property. In addition, Mr. Bates was a co-signer to the mortgage (not the note) representing therein that he would occupy the property securing the loan as his principal residence. Mr. Bates also testified that he intended to mortgage the Residential Property and not the Vacant Property. (Doc. 42-11).

In connection with the Franklin loan application, Mrs. Bates consented to an appraisal on October 19, 2006, and the Appraisal Report indicated that the property located at 1712 Forest Acres Drive, Clarks Summit, PA, which would be used to secure the loan:

a.   Is a single family residence ("SFR") with 2004 square feet of improved space, consisting of a total of (5) rooms, including two (2) bedrooms and two (2) bathrooms;

b.   Is a ranch style home erected in 2005 with some finish work needed such as trim and several closet doors. There is a full basement under the living area and a crawl space under the porch; and

c.   Is worth $235,000.

The appraisal included a "Subject Photo Page" with photographs depicting a property with a house located on it, not a vacant lot. Mrs. Bates

signed the first page of the Appraisal Report and, she acknowledged that the Appraisal Report contained the value of the Residential Property and not the Vacant Property.

In connection with the loan application, Mrs. Bates submitted an insurance policy proof of coverage to Franklin. The Proof of Insurance indicated that defendants had secured insurance to cover a "dwelling" or "residence premises" that is located at 1712 Forest Acres Drive, Clarks Summit, PA, and that the property was "used solely for private residential purposes." Mrs. Bates testified that the Proof of Insurance reflected insurance coverage on the Residential Property.

Based on Mrs. Bates' representations in the loan application and the Proof of Insurance as well as the information in the Appraisal Report, Franklin granted a loan to Mrs. Bates in the amount of $164,500. The terms of this loan, including Franklin's and Mrs. Bates' respective rights, duties, entitlements, and liabilities, were memorialized in a written contract, (the "Franklin Note"), which Mrs. Bates admittedly signed. The Franklin Note provided that in exchange for the sums provided by Franklin, Mrs. Bates was required to pay Franklin the principal balance of $164,500 plus interest and other charges. Mrs. Bates was required to make monthly payments on the first day of each month beginning on December 1, 2006, until all sums due under the Franklin Note were satisfied. The Franklin Note provided that Mrs. Bates would be in default if she failed to pay the full amount of each monthly

payment on the date it was due and that in the event of such default, Franklin (or the holder of the Note) would have the right to require her to pay the full amount of the unpaid principal and all outstanding interest. The Franklin Note also provided that if Mrs. Bates failed to make payments as required under the terms of the Franklin Note, "The Note Holder will have the right to be paid back by [Mrs. Bates] for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees." It is undisputed that Mr. Bates is not a party to the Franklin Note.

As security for the Franklin Note, Mrs. Bates and Mr. Bates executed a mortgage in favor of Mortgage Electronic Registration Systems, Ltd., ("MERS"), as nominee for Franklin, ("Franklin Mortgage"). The defendants did not prepare any of the provisions of the Franklin Mortgage. The Franklin Mortgage is recorded in the Office of the Recorder of Lackawanna County in instrument #200631882. Both Mrs. Bates and Mr. Bates testified that they intended for the Franklin Mortgage to encumber the Residential Property and not the Vacant Property, and they admitted that Franklin intended the Mortgage to encumber the Residential Property. The Franklin Mortgage also contained language that Mrs. Bates and Mr. Bates would occupy the property encumbered by the mortgage as their "principal residence." The legal description of the property encumbered by the Franklin Mortgage erroneously and mistakenly referenced the legal description of the Vacant Property and

8

not the Residential Property. The defendants were not aware of this error when they executed the Mortgage and did not become aware of it until it was brought to their attention at a later date. The parties did not misunderstand the other's intent and there is no dispute that all parties intended for the Mortgage to encumber the Residential Property and not the Vacant Property.

Mrs. Bates received the amount of $164,500 from Franklin and she used the money, in part, to satisfy the debt owed under the Saxon Loan. Mrs. Bates began to make all of the monthly payments of principal and interest due under the Franklin Note, but she defaulted on the terms of the Franklin Note on June 1, 2007, by failing to make the monthly payment that was due and by failing to make the required payment each month thereafter. To date, Mrs. Bates has not cured the default.

On January 28, 2008, the Franklin Mortgage was assigned by MERS, as nominee for Franklin, to the plaintiff by Assignment of Mortgage which was recorded in the Office of Recorder of Lackawanna County as Instrument #200804237.

Subsequently, the plaintiff commenced a mortgage foreclosure action against the defendants in the Lackawanna County Court of Common Pleas due to Mrs. Bates' default on the terms of the Note and the case was docketed to Number 08-cv-1026. During this action, plaintiff and defendants realized for the first time that the Franklin Mortgage, which was assigned to plaintiff, erroneously encumbered the Vacant Property and not the Residential

Property. Based on the erroneous legal description in the Mortgage, plaintiff could not foreclose on the Residential Property.

Based on the error, plaintiff filed the instant action against defendants on March 14, 2013. Count I of plaintiff's amended complaint is for breach of the Franklin Note against Mrs. Bates. Counts II and III are against both Mrs. Bates and Mr. Bates for reformation of the Franklin Mortgage based on mutual mistake and unilateral mistake, respectively. Defendants have moved for summary judgment with respect to the reformation claims of plaintiff's amended complaint (Counts II and III), and plaintiff moved for partial summary judgment regarding its breach of contract claim against defendant Mrs. Bates (Count I) and its claim for reformation by mutual mistake against Mrs. Bates and Mr. Bates (Count II). Plaintiff asserts that the Franklin Mortgage should be reformed to reference the Residential Property and not the Vacant Property and, that once the reformation is granted, it can foreclose on the Residential Property.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v.

10

Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Casualty & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249 ; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

Moreover, the Third Circuit indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007) (citation omitted). A material factual dispute is one that may affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007); Watson v. Eastman Kodak Co., 235 F.3d 851, 858 (3d Cir. 2000) (the non-movant must establish the existence of each element on which it bears the burden of proof).

## IV.   DISCUSSION

It is undisputed that the Franklin Mortgage erroneously encumbered the Vacant Property instead of the Residential Property and that it was the intent of all parties that the Residential Property would serve as security for the loan. The defendants did not cause the error and they were not aware of the error until plaintiff filed the mortgage foreclosure action against them. There is also no dispute that Mrs. Bates defaulted on her obligations under the Franklin Note. (Doc. 45, at 3). As such, plaintiff contends that it is entitled to summary judgment against Mrs. Bates on its breach of contract claim regarding the Franklin Note in Count I and to summary judgment against both defendants on its reformation by mutual mistake claim, Count II, regarding the Franklin Mortgage. The defendants argue that they are entitled to summary judgment with respect to the second and third counts of plaintiff's amended complaint, reformation by mutual mistake and by unilateral mistake.

### A. Count I, Breach of Contract

The plaintiff alleges that Mrs. Bates defaulted on the terms of the Franklin Note since she admits that she did not make the payment due on June 1, 2007, or on any subsequent month.

Because this is a case based upon diversity jurisdiction, 28 U.S.C. §1332, (Doc. 11, ¶ 1), the court applies Pennsylvania law. *See Moore v. Kulicke & Soffa Industries, Inc.*, 318 F.3d 561, 563 (3d Cir. 2003). In order to

13

establish a breach of contract claim under Pennsylvania law, plaintiff must demonstrate: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa.Super. 1999) (citation omitted); Gorski v. Smith, 812 A.2d 683, 692 (Pa.Super. 2002).

The defendants concede that plaintiff has established the first two elements of its breach of contract claim against Mrs. Bates. (Doc. 45, at 5). Further, the undisputed evidence detailed above shows that Mrs. Bates beached the Franklin Note. However, defendants maintain that genuine issues of material fact exist as to whether plaintiff has demonstrated damages resulting from the breach of the Franklin Note. The defendants state that they are disputing the amount and extent of damages Mrs. Bates owes. These include whether plaintiff has recovered monies on the Note and/or pursued other parties to mitigate damages, such as any monies plaintiff may have recovered from pursuing a foreclosure action against the Vacant Property and whether plaintiff has a claim against the title insurance agent who negligently prepared the title search documents necessary for the execution of the Franklin Mortgage which resulted in the wrong legal description of the encumbered property. The defendants state that these monies would reduce any amount Mrs. Bates is liable to plaintiff for, and that plaintiff failed to

14

present any evidence as to these monies.[4]

The court finds that plaintiff has sufficiently established that damages have resulted due to Mrs. Bates breach of the Franklin Note, that Mrs. Bates has not made any payments since her default, i.e., prior to June 1, 2007. Mrs. Bates is obliged to pay the full amount of the unpaid principal of the $164,500.00 loan and all outstanding interest as damages under the terms of the Note, as well as related costs and expenses. However, plaintiff has not produced sufficient evidence from which all damages may be calculated to a reasonable certainty as required under Pennsylvania law.

Further, under Federal Rule of Civil Procedure 39(a), where one or more of the parties has made an appropriate demand, the case is to be tried before a jury. However, similar to all constitutional rights, the right to a jury may be waived. *See* Partners Coffee Co., LLC v. Oceana Services and Products Co., 2009 WL 4572911, *12 (W.D.Pa. December 4, 2009). "[I]n federal actions based on diversity jurisdiction such as this, the right to a jury trial is determined as a matter of federal law ... ." Id. Rule 38(a) states, "[t]he right of trial by jury as declared by the Seventh Amendment to the

---

[4] Oddly, even though defendants were represented by their present counsel in Lackawanna County Court, counsel implies that plaintiff may have recovered monies in that foreclosure action when counsel must be aware that plaintiff did not recover any monies since the case was discontinued without judgment on November 5, 2012. Lackawanna County Court docket no. 2008-cv-1026. (The court takes judicial notice of this state court docket. *See* Fed.R.Evid. 201.)

Constitution—or as provided by a federal statute—is preserved to the parties inviolate." Fed.R.Civ.P. 38(a). Federal Rule of Civil Procedure 38(b) provides: "On any issue triable of right by a jury, a party may demand a jury trial by ... serving the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served." Fed.R.Civ.P. 38(b). The parties in the present case did not demand a jury trial in any of their pleadings. (Doc.1, 11, and 28). In fact, the Civil Cover Sheet filed by plaintiff with its original complaint indicates that no jury demand was made in the complaint. (Doc. 1-1). Thus, the parties waived the right to a jury trial regarding all issues in this case.

Therefore, the court will schedule a hearing to determine the amount of damages plaintiff is owed by Mrs. Bates for her breach of the Franklin Note. *See* Fed.R.Civ.P. 39(b) ("Issues on which a jury trial is not properly demanded are to be tried by the court.").

### B. Count II, Reformation by Mutual Mistake

The plaintiff raises a claim against Mrs. Bates and Mr. Bates for reformation of the Franklin Mortgage by mutual mistake. The court has previously found that Mr. Bates, as an owner of the Vacant Property which is currently encumbered by the Franklin Mortgage, is a proper party with respect to the plaintiff's claim to reform the Franklin Mortgage to encumber the Residential Property even though he is not an owner of the Residential

16

Property.

There is no dispute that a mistake was made in the legal description of the property which was to be encumbered by the Franklin Mortgage and that all parties intended the Residential Property to secure the Franklin Loan and not the Vacant Property. The mistake is demonstrated by the Franklin Mortgage attached to the plaintiff's amended complaint, (Doc. 11-7, at 19-20), which incorrectly reflects that the legal description of the property is the Vacant Property which had the same mailing address as the Residential Property.

The court must look to Pennsylvania law to determine if the Franklin Mortgage should be reformed. As the court in Wells Fargo Home Mortgage v. Leach, 2010 WL 3038794, *3 (W.D.Pa. July 30, 2010), stated:

> "Reformation ... [is an] equitable remed[y] that [is] sparingly granted." H. Prang Trucking Co. v. Local Union No. 469, 613 F.2d 1235, 1239 (3d Cir. 1980). Reformation of a contract "presupposes that a valid contract between the parties was created but, for some reason, was not properly reflected in the instrument that memorialize[d] the agreement." H. Prang, 613 F.2d at 1239. The Pennsylvania Supreme Court stated in Regions Mortgage, Inc. v. Muthler, 585 Pa. 464, 889 A.2d 39, 41 (Pa. 2005), that "[i]t has long been the law that courts of equity have the power to reform a written instrument where there has been a showing of fraud, accident or mistake." FN1 Regions Mortgage, 889 A.2d at 41 (citing Kutsenkow v. Kutsenkow, 414 Pa. 610, 202 A.2d 68, 68–69 (Pa. 1964)). A court has the authority "to reform the written evidence of a contract and make it correspond to the understanding of the parties." Bugen v. N.Y. Life Ins. Co., 408 Pa. 472, 184 A.2d 499, 500 (Pa. 1962).
>
> FN1. Black's Law Dictionary defines mistake as "[a]n error,

misconception, or misunderstanding; an erroneous belief." Black's Law Dictionary 1022 (8th ed. 2004). See Restatement (Second) of Contracts §151 cmt. a (1979) ("The word 'mistake' is used to refer to an erroneous belief. A party's erroneous belief is therefore said to be a 'mistake' of that party. The belief need not be an articulated one, and a party may have a belief as to a fact when he merely makes an assumption with respect to it, without being aware of alternatives.").

To warrant reformation based upon mutual mistake, the movant must demonstrate that "both parties to [the] contract [were] mistaken as to existing facts at the time of execution. Moreover, to obtain reformation of [the] contract because of mutual mistake, the moving party is required to show the existence of the mutual mistake that is clear, precise and convincing." Zurich Am. Ins. Co. v. O'Hanlon, 968 A.2d 765, 770 (Pa.Super.Ct. 2009) (citing Holmes v. Lankenau Hosp., 426 Pa.Super. 452, 627 A.2d 763, 767–68 (Pa.Super.Ct. 1993)). Additionally, the movant must clearly show the actual intent of the parties at the time the instrument was executed. Giant Eagle, Inc. v. Federal Ins. Co., 884 F.Supp. 979, 988 (W.D.Pa. 1995); Hassler v. Mummert, 242 Pa.Super. 536, 364 A.2d 402, 403 (Pa.Super.Ct. 1976). To determine whether mutual mistake exists, the court may consider the subject matter, the apparent object or purpose of the parties and the conditions existing when the instrument was executed. Daddona v. Thorpe, 749 A.2d 475, 487 (Pa.Super.Ct. 2000); see Yuscavage v. Hamlin, 391 Pa. 13, 137 A.2d 242, 244 (Pa. 1958).

Thus, "[m]utual mistake exists where both parties to a contract are mistaken as to the existing facts at the time of execution of the contract." Holt v. Dep't of Public Welfare, 678 A.2d 421, 423 (Pa.Commw.Ct. 1996); Zurich Am. Ins. Co. v. O'Hanlon, 968 A.2d 765, 770 (Pa.Super.Ct. 2009).

Further, "[t]he negligence of one party to the contract in failing to recognize the error in executing the agreement does not prevent that party from later asserting mutual mistake." Leach, 2010 WL 3038794, *3 (citing

18

General Electric Credit Corp. v. Aetna Cas. & Sur. Co., 437 Pa. 463, 263 A.2d 448, 457 (Pa. 1970) ("if all of the elements necessary for the reformation of a written contract are present, mere negligent conduct on the part of one of the parties thereto in failing to discover the mistake will not bar reformation in the absence of prejudice or a violation of a positive legal duty")).

Under Pennsylvania law, the evidence standard in reformation cases is high and the party asserting it is required to show the existence of the mutual mistake by "clear [and precise] and convincing" evidence. Holmes v. Lankenau Hosp., 426 Pa.Super. 452, 627 A.2d 763, 767–68 (1993). Also, "the sufficiency of the evidence to meet ... the 'clear and convincing' standard is a question of law ... ." Blair v. Manhattan Life Ins. Co., 692 F.2d 296, 299 (3d Cir. 1982) (citing Commonwealth v. Sanford, 580 Pa. 604, 863 A.2d 428, 431 (Pa. 2004) ("whether the Commonwealth met its burden of proof by producing clear and convincing evidence was a question of law")). "As a general rule, parol evidence may also be introduced to demonstrate the existence of mutual mistake." Leach, 2010 WL 3038794, at *4; Butcher v. General Motors Co., 2015 WL 867797, *3 (W.D.Pa. February 27, 2015).

In Pennsylvania, the "two-witness" rule is used "where one party seeks to reform or alter a written instrument......because of fraud, accident, or mistake the written instrument does not represent the original intention of the parties." Blair v. Manhattan Life Ins. Co., 692 F.2d at 303. In the present case, plaintiff is seeking to reform the Franklin Mortgage because of mistake and

it asserts that the Mortgage does not reflect the true intention of the parties since they all intended the Residential Property to be encumbered and not the Vacant Property. Indeed, this intention of the parties is not disputed.

Thus, "[t]o satisfy the clear and convincing standard in reformation cases, the movant must provide evidence by 'two witnesses, or one witness and corroborating circumstances.'" Leach , 2010 WL 3038794, *4 (citing Blair v. Manhattan Life Ins. Co., 692 F.2d at 303) (citing Easton v. Washington County Ins. Co., 391 Pa. 28, 137 A.2d 332, 337 (Pa.1957)). Additionally, "[t]he witnesses presented[:]

> must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty, and convincing as to enable the [finder of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

Id. (citations omitted). The surrounding circumstances are "the most trustworthy form of corroboration." Id. (citations omitted). Additionally, the court must consider all the evidence in deciding if the Franklin Mortgage should be reformed based upon mutual mistake, "including the actions of the parties, witness statements, and the circumstances surrounding the contract's formation." Id., at *5 (citations omitted).

The plaintiff has met its high burden and it is entitled to reformation of the Franklin Mortgage by mutual mistake. The plaintiff correctly indicates, (Doc. 43, at 19), that the *Leach* case is almost directly on point with the

instant case since the parties in *Leach* intended the mortgage to encumber Leach's residential parcel with his house located on it and not his adjacent parcel which had a tennis court and landscaping but no building. In fact, both of Leach's parcels had the same mailing address similar to the properties in the present case. Additionally, as in the present case, the appraisal in *Leach* referenced the house located on the residential parcel and there was no house on the adjacent parcel. Also, in *Leach*, as in the present case, the mortgage mistakenly encumbered the adjacent parcel and the property that secured the loan only had the legal description of the adjacent property. The district court in *Leach* reversed the decision of the bankruptcy court and found that "[t]he evidence is clear and convincing that at a minimum, a mutual mistake was made and the mortgage must be reformed to include the residential property" and that the evidence, taken as a whole, clearly and convincingly established that Leach and the mortgage company mistakenly believed that the mortgage encumbered the residential property. Id., at *7 -*8.

In the present case, as in *Leach*, all of the relevant documents detailed above regarding the Franklin Mortgage, including the loan application, the appraisal report and the mortgage, contained a "residential theme." Mrs. Bates also submitted proof of insurance on her house to secure the Franklin Loan. These documents show the Bates' intent to convey an interest in the Residential Property and Franklin's intent to receive an interest in the Residential Property which contained the single family residence. Further, it

21

is significant that Mrs. Bates used some of the monies she received from the Franklin Loan to pay off the Saxon Loan which encumbered the Residential Property. Also, Mr. Bates and Mrs. Bates acknowledge the existence of the mistake and there is no dispute that Bates and Franklin intended for the Mortgage to encumber the Residential Property and not the Vacant Property. As in the *Leach* case, all of this is clear and convincing evidence that the parties intended to encumber the Residential Property with respect to the Franklin Loan and Mortgage.

The defendants maintain that there is no allegation that either party misunderstood the other's intent and that the mistake in the property description that led to the mortgage being secured by their Vacant Property was not a mutual mistake. Rather, defendants state that only the plaintiff bore the risk of the mistake and that plaintiff's predecessor in interest prepared the documents containing the mistake. The defendants state that they did not prepare the mortgage documents and the description attached to the mortgage, and that they did not conduct the title search of the property and record the incorrect property description. Also, it is undisputed that defendants were not aware of the mistake when the mortgage was executed. The defendants contend that "plaintiff should be found to bear the risk of a mutual mistake and therefore should be unable to obtain reformation based on it." (Doc. 44, at 6-7, Doc. 45, at 6-7). The defendants also state that the *Leach* case is distinguishable since the court in that case did not address

22

whether the bank bore the risk of mutual mistake and the debtor (Leach) did not raise the defense of risk of loss. Thus, defendants maintain that plaintiff should bear the risk of loss since the mistake in the legal description of the property encumbered by the Franklin Mortgage was solely caused by the plaintiff's predecessor in interest or its agents.

In support of their argument, defendants cite to Hart v. Arnold, 884 A.2d 316 (Pa.Super. 2005), and Volpe & Koenig, P.C. v. National Sales & Supply, Inc., 2012 Phila Ct. Com. Pl. LEXIS 413 (Phila. Ct. Com. Pl. Nov. 26, 2012). The defendants state that in *Hart*, the court held that "[a] party bears the risk of a mistake when the risk is allocated to him by the Court on the ground that it is reasonable in the circumstances to do so." (Doc. 44, at 5) (citing Hart v. Arnold, 884 A.2d at 334). The plaintiff maintains that the defendants' reliance upon *Hart* and *Volpe* is misplaced since both cases involved attempts to use mutual mistake to invalidate a contract as opposed to reform it. (Doc. 46, at 4). The defendants reply that the Superior Court in *Hart*, 884 A.2d at 334, held that under proper circumstances "A contract entered into under a mutual misconception as to an essential element of fact may be rescinded or reformed upon the discovery of the mistake." (Doc. 49, at 2). Thus, defendants state that "[t]he standards governing mutual mistake apply regardless of whether the party claiming it seeks to invalidate a contract or reform it." The defendants state that the mutual mistake alleged by plaintiff was a shared mistake upon which both parties relied. The defendants then

contend that since plaintiff should be found to bear the risk of the mistake as the plaintiff's predecessor in interest and its agents prepared the documents containing the mistake, the plaintiff cannot obtain reformation due to the mistake. (Id.).

The court in Travelers Indem. Co. v. Ballantine, 436 F.Supp.2d 707, 711 (M.D.Pa. 2006), stated:

> Pennsylvania follows the Restatement (Second) of Contracts when determining mutual mistake. Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is **voidable** by the adversely affected party unless he bears the risk of the mistake under the rule stated in §154. Hart v. Arnold, 884 A.2d 316, 333 (Pa.Super. 2005) (quoting Restatement (Second) of Contracts §152 (1981)). A party bears the risk of a mistake if the parties have agreed that one party bears the risk, a party makes a contractual agreement and at the time the agreement is made "... treats his limited knowledge [of the facts relating to the mistake] as sufficient," or **the court allocates the risk to a party because it is reasonable to do so.** Id. at 334 (citing Restatement (Second) of Contracts §154). A contract entered into under a mutual misconception as to an essential element of fact may be rescinded or reformed upon the discovery of the mistake if (1) the misconception entered into the contemplation of both parties as a condition of assent, and (2) the parties can be placed in their former position regarding the subject matter of the contract. Id. (citing Gocek v. Gocek, 417 Pa.Super. 406, 612 A.2d 1004, 1006 (1992)).

(Emphasis added).

24

If the plaintiff bears the risk of the mistake, then the Franklin Mortgage is not voidable. In the present case, plaintiff is requesting the court to reform the Franklin Mortgage based on mutual mistake and not invalidate it. Based on all of the facts detailed above, there is ample evidence to support the plaintiff's claim of mutual mistake regarding the Franklin Mortgage. Both Franklin and the defendants intended to have the Mortgage encumber the Residential Property and not the Vacant Property. All of the documents pertaining to the Franklin Mortgage as well as the testimony of the defendants reflect this intent. In short, Franklin intended to loan Mrs. Bates $164,500 only if she allowed the loan to be secured by the Residential Property and Mrs. Bates intended to encumber the Residential Property to get her loan so that she could pay off the Saxon Loan on this property and to complete repairs on her house located on this property. There is no evidence in the record as to exactly how the mistake occurred or who caused it and the court will not speculate on these matters. It also appears that neither party read the Franklin Mortgage in full with the attached legal description of the Vacant Property before they executed it. *See* Behavioral Health Industry News, Inc. v. Lutz, 24 F.Supp.2d 401, 402 (M.D.Pa. 1998) (the court noted that parties have the obligation to read a contract before signing it). Suffice to say that under all of the circumstances of this case, the court does not find it reasonable to allocate the risk of the mistake entirely to the plaintiff. (*Compare* Travelers Indem. Co. v. Ballantine, 436 F.Supp.2d at 712) (the court found

that in the circumstances presented in that case, it was reasonable to allocate the risk of the mistake to the defendants as it was clear that they did not read the contract before signing it and, it would not be possible to place the plaintiff in the position that it was in before the execution of the contract). The mistake in the instant case can be rectified and the parties can be placed in their intended positions at the time they were executing the contract by reforming the Franklin Mortgage to encumber the Residential Property.

The defendants also state that generally, "a party will not gain relief from a mistake if it is the result of the party's own negligence." (Doc. 44, at 5) (citing Volpe & Koenig, P.C. v. National Sales & Supply, Inc., supra). Insofar as defendants are claiming that plaintiff is not entitled to reformation since the plaintiff's predecessor in interest or its agents (such as the title company) caused the mistake through negligence, the law is clear in Pennsylvania that "negligence on the part of one party to a contract does not preclude that party from later requesting reformation based upon mutual mistake." Leach, 2010 WL 3038794, *7 (citing General Electric, 263 A.2d at 457). Thus, even if the plaintiff's predecessor in interest and its agents were negligent by attaching the legal description of the Vacant Property to the Franklin Mortgage, this will not prevent the reformation of the Franklin Mortgage to encumber the Residential Property, which was the true intent of the parties.

The plaintiff has produced evidence that clearly and convincingly demonstrates a mutual mistake existed in the Franklin Mortgage and that it

26

should be reformed to include an accurate legal description of the Residential Property in place of the Vacant Property. As such, the court will grant plaintiff summary judgment on Count II, reformation by mutual mistake.

Since the court will grant plaintiff summary judgment on its reformation by mutual mistake claim, it will deny defendants' summary judgment on this claim as genuine issues of material fact do not exist as to whether the plaintiff is entitled to reform the Franklin Mortgage by mutual mistake.

### *C. Count III, Reformation by Unilateral Mistake*

The defendants move for summary judgment on plaintiff's reformation by unilateral mistake claim, Count III. "Pennsylvania law permits contract reformation upon a showing of either mutual mistake or unilateral mistake." United Nat. Ins. Co. v. Indian Harbor Ins. Co., 2015 WL 437630, *10 (E.D.Pa. February 02, 2015) (citing Regions Mortg., Inc. v. Muthler, 844 A.2d 580, 582 (Pa.Super.Ct. 2004). "A unilateral mistake[] ... is not due to the fault of the party not mistaken, but to the negligence of the one who acted under the mistake ... ." Roth v. Old Guard Ins. Co., 850 A.2d 651, 653 (Pa.Super. 2004) (citations omitted). "If a party is seeking reformation on the basis of unilateral mistake, however, it must plead 'that the party against whom reformation is sought had such knowledge of the mistake as to justify an inference of fraud or bad faith.'" United Nat. Ins. Co. v. Indian Harbor Ins. Co., 2015 WL 437630, *10 (citing Regions Mortg., Inc., 844 A.2d at 582; Dudash v. Dudash, 313

Pa.Super. 547, 460 A.2d 323, 327 (1983)). Also, "[p]arties raising allegations of fraud or mistake in a pleading must do so with particularity." Id. (citing Fed.R.Civ.P. 9(b)).

The defendants argue that they have denied any knowledge of the mistake when the Franklin Note and Mortgage were executed and that plaintiff has not presented any evidence that they had such knowledge. Thus, defendants state that plaintiff cannot show they knew of the mistake or that they committed fraud or bad faith. The plaintiff concurs with defendants that there is no evidence that they had any knowledge of the mistake in the Franklin Mortgage at the time of its execution and that there is no evidence that defendants acted fraudulently or in bad faith by signing the Mortgage without bringing the mistake to the attention of Franklin Bank. (Doc. 47, at 21-22). The defendants are entitled to summary judgment with respect to plaintiff's reformation by unilateral mistake claim, Count III. While it is undisputed that there is no evidence to support its reformation by unilateral mistake, the plaintiff however requests that the court prohibit defendants "from later asserting in this or any other proceeding [such as a mortgage foreclosure action in state court] that they intended for the Mortgage to encumber the Vacant Property, not the Residential Property." (Id., at 22). The court finds such a prohibition in its order as unnecessary since both Mrs. Bates and Mr. Bates testified in their depositions that they intended for the Franklin Mortgage to encumber the Residential Property and not the Vacant

Property, and they admitted that Franklin intended the Mortgage to encumber the Residential Property.

## V.    CONCLUSION

The plaintiff's motion for partial summary judgment, (Doc. 41), will be **GRANTED** with respect to liability on the breach of contract claim, Count I of the amended complaint, and the reformation by mutual mistake claim, Count II. The defendants' motion for partial summary judgment, (Doc. 38), will be **DENIED** with respect to the reformation by mutual mistake claim, Count II, and will be **GRANTED** with respect to the unilateral mistake claim, Count III. An appropriate order will be issued.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date:  March 30, 2015**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-0690-02.wpd